In the Matter of Lloyd Dell COLIN and Delores Maxine Colin, d/b/a Colin Farm, Debtors.

**COMMERCE BANK OF KANSAS CITY, N.A., Plaintiff,**

v.

**Lloyd Dell COLIN and Delores Maxine Colin, Defendants.**

Bankruptcy No. 84–00499–SJ–11.
Adv. No. 84–0223–SJ–11.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Oct. 18, 1984.

See also, Bkrtcy., 44 B.R. 709.

Bruce E. Strauss, Shockley, Reid & Koger, Kansas City, Mo., for plaintiff.

Jeffrey P. White, Chicago, Ill., Harold Kyser, Butler, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE THAT THE DEFENDANTS' INDEBTEDNESS TO PLAINTIFF IN THE SUM OF $4,095.30 BE, AND IT IS HEREBY, DECLARED TO BE NONDISCHARGEABLE IN BANKRUPTCY AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SAME SUM FROM THE DEFENDANTS

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff seeks judgment from the defendants in the sum of $4,095.30 for credit card charges incurred by the debtors both prior and subsequent to bankruptcy. With respect to the charges made prior to bankruptcy, the plaintiff asserts that the charges are nondischargeable in bankruptcy as liabilities created by fraud within the meaning of section 523(a)(2) of the Bankruptcy Code. With respect to the post-bankruptcy charges, it is asserted that they cannot be affected by the discharge in

bankruptcy, which discharges only prepetition debts.

The action came on before the court for hearing on August 31, 1984, whereupon the plaintiff appeared by Bruce Strauss, Esquire, its counsel, and the defendants appeared personally and by Beth Benjamin, Esquire, their counsel. The evidence which was then adduced warrants the following findings of fact.

The bankruptcy petition in this chapter 11 case was filed by the debtors on February 16, 1984. Prior to that time, on or about November 11, 1983, the debtors were issued a Master Card. On or about December 22, 1983, they were issued a Visa credit card. According to the uncontroverted testimony of the debtor Lloyd Colin, all that was necessary for him to secure the issuance of either card was for him to sign a form of written solicitation which he had received in the mail. According to the evidence, some $1387.10 in prebankruptcy charges were made on the Master Card and $1271.79 on the Visa card. Mr. Colin at first claimed in the course of his testimony that the charges were for the seed and fuel essential to his planting of farm crops. But the evidence shows that many of the charges were for clothing, travel, and other nonessentials. They were admittedly made at a time when the debtor had no hope of paying for them unless he obtained a loan which he states that he was attempting to get.[1] The schedules of debtors' debts and assets filed in these bankruptcy proceedings show a picture of drastic insolvency.[2] When asked on cross-examination to disclose the basis upon which he could predicate a reasonable expectation of future ability to pay, Mr. Colin could only state that he believed that he would be able to pay his bills "because I had always been able to pay in the past." But, admittedly, he had not been able to meet his bills as they came due during this period of time.

Ultimately, on February 1, 1984, the debtors first consulted with their attorney with the thought of filing bankruptcy proceedings. Nevertheless, they continued to make credit card charges on both the Master Card and Visa accounts. Further, even after they filed bankruptcy proceedings on February 16, 1984, they continued to build up this virtually unpaid account, rolling up postbankruptcy charges of $231.34 in Master Card charges and $1205.07 in Visa charges. The charges which were thus made far exceeded the stated limit of their lines of credit. And, even after the debtors were requested by the entities issuing the credit cards to stop making charges and to turn the credit cards back in, the debtors continued to incur charges.

### Conclusions of Law

■ The paradigm elements of a dischargeability action based on fraud are set out in *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975), as follows:

"(1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

See also *Sweet v. Ritter Finance Company*, 263 F.Supp. 540, 543 (W.D.Va.1967). There can be little question, under the facts of this action as found above, that the creditor relied upon the debtors' use of the credit card to allow them to make purchases on credit and that the creditor suffered damage as the proximate result thereof. It further appears that the debtors used the credit cards intentionally and did so at a time when they had no intention to pay, as is clearly evidenced by their hopeless insol-

---

1. According to the testimony of the debtor Lloyd Dell Colin, the only thing on which he could predicate any belief that he would pay the bills which were building up through use of the charge cards was that they had usually always been able to pay their bills in the past.

2. By the time the schedules were filed in the underlying bankruptcy case on February 16, 1984, the liabilities were some $777,868.49 and the total value of property was $250,099.00 with very little liquidity or cash.

vency and their continued use of the cards despite exceeding the credit limit and despite the creditor's instructions to cease and desist the use of them. The debtors, in fact, according to the evidence, ordered the cards only a relatively short time before bankruptcy and, according to their own admission, at a time when they could not otherwise fund the purchases which they were making. According to the governing authorities, in such circumstances, the law implies a misrepresentation and regards it as fraudulent in view of the necessary lack of intention and inability to pay. See, e.g., IA Collier on Bankruptcy para. 17.16, pp. 1638–1640.1 (1976), to the following effect:

"A mere promise to be executed in the future is not sufficient to make a debt nondischargeable, even though there is no excuse for the subsequent breach. A misrepresentation by the bankrupt of his intention, however, may constitute a false representation within the exception. Thus, a purchase of goods by a bankrupt who does not intend to pay therefor, constitutes a false representation, ... *To require an overt misrepresentation where hopeless insolvency makes payment impossible is an unduly restricted interpretation of the purposes of the Act.* (Emphasis added.)

See also the recent decision of our distinguished colleague, the Honorable Joel Pelofsky, in *In re Pittman,* 41 B.R. 382, 383 (Bkrtcy.W.D.Mo.1984), to the following effect:

"A consumer using ... credit ... is held to imply a willingness and an ability to pay for the purchases ... If such willingness and ability are lacking, the use ... is fraudulent and the resulting debt nondischargeable."

These authorities squarely govern the egregious set of facts in this case and require that the decree of nondischargeability be entered in the amounts of the charges made by the debtors without any ability or intention to pay for them.

### The issue of jurisdiction

■ The statutes which currently govern jurisdiction of bankruptcy matters require that the bankruptcy court initially, on its own initiative or otherwise, determine its own jurisdiction.[3] More particularly, it is required that the bankruptcy court determine whether a proceeding is a "core" proceeding or a "non-core" proceeding as defined in section 157, Title 28, United States Code.[4] If the action falls into the latter category, the bankruptcy court may hear the case, but it must be determined by the district court on the basis of recommended findings of fact and conclusions of law submitted by the bankruptcy judge.[5] A case in a "non-core" proceeding if it arises under state law and would be a case triable in a state court but for the intervention of bankruptcy.[6]

■ There are two components in the action at bar. One is the dischargeability determination. The other is the underlying action for a money judgment. The latter arises under state law and would be triable in a state court absent the existence of the

---

**3.** See new section 157(b)(3), Title 28, United States Code, to the effect that "(t)he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this section ·or is a proceeding that is otherwise related to a case under title 11."

**4.** See section 157(b)(2), Title 28, United States Code.

**5.** See section 157(c)(1), Title 28, United States Code, to the following effect: "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceedings, the

bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

**6.** In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), it was "effectively held that certain private *state* law claims, when adjudicated within the federal system, must be decided by Article III courts." *Kalaris v. Donovan,* 697 F.2d 376, 386 (D.C.Cir.1983).

bankruptcy proceedings. The authorities have traditionally recognized that this underlying action is a case which does not "arise in" bankruptcy proceedings and which is solely triable under principles of state law. See 1A Collier on Bankruptcy para. 17.28A, p. 1742.6 (1976), to the following effect:

> "If the issue of dischargeability is not one subject to the right of jury trial the facts necessary for proof on that issue would not seem to create such a right by themselves. The difficulty is that prior to this legislation, the suit would be in the state court *on the debt.* When the affirmative defense of discharge was pleaded, the elements of false financial statement and reliance ... would be raised by the plaintiff in response to the affirmative defense, i.e., that the defense was not valid because the debt was nondischargeable in bankruptcy ... (T)here may well have been a right to jury trial in the action on the debt ..."

These principles have particular application in the action at bar, in which the greater portion of the money judgment is sought for the postbankruptcy charges. Postbankruptcy debts do not arise in the bankruptcy proceedings and are related to the bankruptcy case only by reason of the debtors' being a party to the action. In pertinent part, therefore, this action would seem to be a "non-core" proceeding which should be submitted to the district court for the entry of judgment.[7]

It is this question on the proper procedure to be utilized in rendering this judgment which has given the court great pause in making the decision. Failure to have judgment rendered by the proper judicial authority may run afoul of the rule of *Northern Pipeline Constr. Co. v. Mara-thon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), holding that actions arising under state law may only, within the federal judicial system, be determined by Article III judges.[8]

In the action at bar, however, with respect to the existence and magnitude of the indebtedness, the defendants have not, either in the motion or the trial of this action, offered any statement or showing which tends to contradict the existence or amount of the indebtedness demonstrated by the plaintiff. In order to command a right to attention and determination by a court of plenary jurisdiction, the parties must demonstrate that there is a genuine issue to be resolved by it. *Matter of Kakolewski,* 29 B.R. 572, 575 (Bkrtcy.W.D.Mo.1983). And, on the issue of the existence and magnitude of debt, the defendants have not made any factual issue. Accordingly, it seems proper for the bankruptcy court to proceed to the entry of judgment. While it is true that the current bankruptcy statutes give little vent to the concept of consent jurisdiction,[9] it does not appear that the courts be put to unusually complicated tasks in order to recognize what amounts to a consent judgment or stipulation on the issue of liability.[10]

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the defendants' indebtedness to the plaintiff in the sum of $4095.30 be, and it is hereby, declared to be nondischargeable in bankruptcy. And it is further

ADJUDGED that the plaintiff have and recover the same sum from the defendant.

7. See note 5, *supra.*

8. See note 6, *supra.*

9. See note 5, *supra,* seeming to point out that, even when the parties acquiesce in bankruptcy court jurisdiction, the bankruptcy judge is still obliged, on his own motion, to raise the issue of whether the action is a "core" proceeding or a "non-core" proceeding and, if it is the latter, refer it to the district court on a report and recommendation for judgment.

10. In the hearing held in this action, the defendants raised no contrary contention or evidence as to the amounts due. It seems to labor to make the present statute unworkable to send such an issue-less matter to the district court for determination.