**In re Toney Kim RAY, Debtor.**

**Myong S. CAMPANA, Jae Cheol Chang, et al., Plaintiffs,**

**v.**

**Toney Kim RAY, Defendant.**

**Bankruptcy No. 82–00024.
Adv. No. 82–0044.**

United States Bankruptcy Court, D. Hawaii.

July 29, 1985.

Ronald Au, Honolulu, Hawaii, for plaintiffs.

Kenneth H. Nakamura, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

On March 15, 1982, Myong S. Campana and 20 others ("Plaintiffs") filed a Complaint for Determination of Dischargeability of Debts in the subject cause. On April 14, 1982, Toney Kim Ray ("Debtor") filed her Answer to Complaint, denying the pertinent allegations of the Complaint.

A hearing on the Complaint was held on January 16, June 25, June 26, June 27, December 17 and December 18, 1984. Ronald G.S. Au, Esq., and Wayne H. Mukaida, Esq. represented Plaintiffs and Kenneth H. Nakamura, Esq., represented Debtor. Based upon the evidence presented, memoranda filed, records in the case, and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In their complaint, the Plaintiffs represented that their action was brought pursuant to 11 U.S.C. Sec. 523(a)(2). The Plaintiffs claim that Debtor obtained money from each of the 21 Plaintiffs "through misrepresentation, fraud and false pretenses by representing among other things, to the Plaintiffs that she had more than adequate financial resources to repay each of the Plaintiffs when in fact she knew she did not have such resources; and that she would repay each of the Plaintiffs when in fact at the time of the representation she knew she had neither the means nor the intention to repay them."

The complaint prays that "the Court declare that Defendant may not be discharged from each of the 21 claimed debts listed in the complaint."

Between 1978 and December of 1981, Debtor either borrowed directly from various individuals or withdrew large sums of money from various tanomoshi groups. In some isolated instances, Debtor incurred indebtedness to various businesses. Combined, the total debts incurred by Debtor amounted to around $1,200,000.00.

Debtor became involved in what is commonly known as "tanomoshi", a devise which became popular among Korean immigrant women. All of the Plaintiffs who gave testimony during the trial are of Korean immigrant descent, and were members of one or more of Debtor's tanomoshi groups.

The "tanomoshi" is headed by an "Oya" or "Banker" who acts as an organizer and leader of the group and operates the tanomoshi until its termination. The tanomoshi is formed by any number of people, varying from 10 to 36 or more individuals who pledge to contribute a set amount of money each month.

At the first meeting of the group, the Oya receives all of the money without submitting any bid. For example, if an Oya organizes a tanomoshi comprised of 10 members each agreeing to contribute $1000.00 each month, at the first meeting the Oya receives the whole "kitty" or "pot" of $10,000.00. This is in recognition of the role the Oya plays in organizing and running the tanomoshi group.

Thereafter, at each meeting, one or more members submit bids in order to be able to "withdraw" or "borrow" moneys for their own use. The bid is actually the amount that the bidder pays at that meeting for the right to use the money. In other words, in a case of a tanomoshi consisting of 10 members who start out contributing $1,000.00 each, if the highest bid is $2,000.00 at the second meeting, the successful bidder would only receive $8,000.00. The balance of the $2,000.00 would be

shared equally by the remaining 9 members.

In the foregoing example, the successful bidder is obligated to continue contributing $1000.00 each month for the next 8 months, the full life of the tanomoshi. The tanomoshi, unless terminated by agreement of all the members of a group, would last until each member has had an opportunity to bid on the "kitty" or "pot".

The reasons for joining a tanomoshi are varied. A person may organize or join a tanomoshi because he or she needs money and does not have sufficient collateral to borrow from a commercial institution. Or, a person may join a tanomoshi to earn a profit, especially, if he or she can remain in the tanomoshi group without submitting any bid. The last member receives the whole kitty without any payment to any other member of the group.

The tanomoshi is based on trust. In order to join a particular tanomoshi, a person must know the Oya or must be recommended by a person who knows the Oya. There is apparently no particular financial requirements as a requisite for membership, nor is there any representation made as to a person's background before he or she may become a member. Thus, if a person is brought to a tanomoshi meeting by one who knows the Oya, that person is accepted as a member. There does not appear to be any financial requisite to form one's own tanomoshi group.

Any person may form any number of tanomoshi groups. Debtor, at times, had five tanomoshi groups operating simultaneously and some of the Plaintiffs themselves operated several tanomoshi groups simultaneously. Similarly, a person is not restricted in the number of tanomoshi memberships in any one tanomoshi group or in the total number of groups that he or she may join. Debtor became a member of both Plaintiffs Sue Rey Long's and Su Pok Yamamoto's tanomoshi groups, holding more than one share in each of the tanomoshi groups.

Of the 21 Plaintiffs, only four testified relating to their allegations. The four were Jae Cheol Chang, Helen Kim, Sue Rey Long and Su Pok Yamamoto.

*Jae Cheol Chang* is a taxi driver and was a member of one of Debtor's tanomoshi groups. He testified that he joined the group based upon the recommendation of his brother-in-law, Chung Woo Kim, who was a friend of Young H. Dow, Debtor's bookkeeper. He further testified that Debtor did not talk to him prior to his joining the group and thereafter Debtor only related to him the amount that was owed by each member.

Mr. Chang further stated that he understood the mechanics of a tanomoshi and that he expected to earn a profit by submitting a bid toward the end of the tanomoshi. He paid in a total of $6,462.00 to the group which was never recovered.

*Helen Kim* testified that she knew Debtor in Korea, as far back as 1972. She testified that she joined two of Debtor's tanomoshi groups, one being organized on February 17, 1981 and the other being organized on September 10, 1981. In addition, she made two separate loans to Debtor in the total sum of $10,000.00, $5,000.00 on July 17, 1981 and $5,000.00 on December 28, 1981, based on Debtor's promise to return the loans. Upon questioning by her attorney as to the reasons for her trust in Debtor, Mrs. Kim stated,

> I trusted her because she have [sic] rich boy friend, always she have [sic] a nice dress, she have [sic] ... she go to very expensive restaurant. So I believe her. (Transcript, p. 152).

*Sue Rey Long* testified that she was a long time friend of Debtor, that she knew Debtor from their early days in Puson, Korea. Mrs. Long claims that Debtor owes her a total of $83,000.00, which includes moneys taken out by Debtor from Mrs. Long's tanomoshi groups and personal loans made by Mrs. Long to Debtor.

Of the $83,000.00 debt, $10,000.00 consisted of personal loans, $5000.00 which was made in September 1981 and $5,000.00 which was made in October 1981, based on Debtor's promise to return the loans. The

$10,000.00 loan was secured by a cocktail diamond ring. Mrs. Long borrowed $5,000.00 for herself by using the ring as collateral and she no longer has the ring.

Mrs. Long testified that she was Oya of three tanomoshi groups in which Debtor was one of the members. A $15,000.00 tanomoshi group was formed by Mrs. Long on February 15, 1980, in which Debtor had two shares. This group has been completed. A $42,000.00 group was formed by Mrs. Long on September 20, 1981 which was terminated, because some members have not paid and nine (9) members could not be found at that time, one of the nine being Debtor. A $50,000.00 tanomoshi group which was formed on October 10, 1981 was dissolved because no one has paid in any money. Mrs. Long does not state when Debtor withdrew her shares from the above-mentioned tanomoshi groups.

In explaining the operation of the tanomoshi, Mrs. Long stated that, as long as the Oya took responsibility for payments by the members of a group, it made no difference who made up the membership. She further stated that, if the members did not pay their shares, then the Oya was responsible for their shares and the Oya is to collect from the defaulting members.

Because they were long-time friends, Mrs. Long and Debtor trusted each other and joined each other's tanomoshi groups. Mrs. Long does not remember how much money she drew from Debtor's tanomoshi groups nor does she remember how much money Debtor paid back to her out of the $83,000.00. She claims that, because of all of her financial problems, she cannot remember, saying, "I can't remember. I lost my brains," or "I don't have no memory" and "my brains damaged."

*Su Pok Yamamoto* claims that Debtor owes her $51,883.00, of which $21,883.00 was a personal loan made on December 10, 1981 and $30,000.00 was the result of two draws of $15,000.00 each from one of Plaintiff's tanomoshi groups. On the $21,883.00 personal loan, Mrs. Yamamoto testified that she had received a promissory note from Debtor on December 10, 1981, wherein Debtor promised to pay $1400.00 each month. However, she stated that she has lost the promissory note.

With reference to the $30,000.00 withdrawn by Debtor from one of Mrs. Yamamoto's tanomoshi, Mrs. Yamamoto claims that Debtor owes that amount to the members of the group; however, she claims that the $30,000.00 should be paid to her because the members owe that amount to her and they have told her to collect that amount from Debtor.

Mrs. Yamamoto first joined one of Debtor's tanomoshi groups, then she asked Debtor to join her own group. Debtor did not represent to Mrs. Yamamoto that she was wealthy and Mrs. Yamamoto did not check the Debtor's financial background. Mrs. Yamamoto thought Debtor was a millionaire because Debtor "wear big diamond just like rich girls" and "she got boutique shop."

Debtor was on the witness stand for several days. She acknowledged that, from 1978 through 1981, she drew out approximately $828,000.00 from the various tanomoshi groups, her own and those operated by others. Debtor also acknowledged that, during the same period she borrowed from various people several hundred thousand dollars by way of personal loans, perhaps as much as $550,000.00.

During the years 1980 and 1981, Debtor claims that she was paying approximately $50,000.00 per month into the various tanomoshi groups from which she had withdrawn moneys or because some members of her tanomoshi groups had withdrawn monies, then have failed to make the monthly contributions.

In addition to the $50,000.00 per month in payments to the various tanomoshi groups, Debtor claims she was paying approximately $13,000.00 per month during 1980 and 1981 in interest payments alone on personal loans made from various individuals listed in her amended schedule. These loans all carried 3%, 4% or 5% per month in interest, as in the case of Helen Kim and Su Pok Yamamoto to whom Debtor claims

she has paid 4% per month in interest payments alone.

Debtor was bidding on various tanomoshis and using the withdrawals to make payments on other tanomoshis. She was also borrowing moneys at high rates of interest to make payments on the various tanomoshis and to pay the monthly interest on her loans.

Although Debtor was in the jewelry business, she testified that she didn't sell any jewelry in 1981 because all of the jewelry were used as collateral for loans. Debtor testified that she lost money in her business (Luster, Inc.) in 1981 (Transcript, p. 57).

Debtor claims she has paid approximately $600,000.00 in tanomoshi payments during each of the years 1980 and 1981. She also claims that she has paid a total of approximately $156,000.00 in interest payments during each of the years 1980 and 1981 (Transcript, January 16, 1984, pages 72 and 73).

Debtor acknowledged that, by September 28, 1981, she was insolvent. The check for $5,000.00 which she had written and delivered to Helen Kim was returned on account of insufficient funds. However, she still continued to borrow money in October, November and December of 1981.

In early December of 1981, Debtor, accompanied Ann Kim, aka Ing Sook Kim, to an attorney's office where Ms. Kim discussed the matter of seeking relief in the bankruptcy court. Debtor stated that, at such time, although she thought about filing bankruptcy, she had not yet so decided.

On or about December 21, 1981, Debtor discussed her financial problems with her brother, Jae Ho Kim, who recommended that she consult an attorney to file for bankruptcy. Shortly thereafter, Debtor did consult an attorney. Debtor and her brother were aware of bankruptcy, for their younger brother had filed bankruptcy several years earlier.

On December 30, 1981, Debtor's daughter and a sales girl took the inventory of Luster, Inc., for, after consulting counsel on or about December 21, 1981, she had decided to file for relief in bankruptcy. Debtor filed her petition for relief in the bankruptcy court on January 13, 1982 and, on the same day, left for Los Angeles, together with Ann Kim who had filed for bankruptcy one month earlier.

It is to be noted that the testimony of Debtor at the hearing is replete with contradictions, not only with responses given by her in her prior deposition or interrogatories, but by the testimony of other witnesses. For example, she testified that she had borrowed money from Mr. Y.H. Dow, her bookkeeper, and returned such loan. In contrast, Mr. Dow testified that he had never loaned any money to Debtor; thus, she had never repaid him for any loan.

## CONCLUSIONS OF LAW

1. The Complaint for Determination of Dischargeability of Debts filed by the 21 Plaintiffs was brought pursuant to 11 U.S.C. Section 523(a)(2) which provides as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

. . .

2. There was no evidence of any written document by Debtor concerning her financial condition on which the Plain-

tiffs relied to make any loan to Debtor. Thus, the Court finds no cause of action against Debtor under Section 523(a)(2)(B).

■ 3. With reference to Section 523(a)(2)(A), to present a prima facie case of nondischargeability, the Ninth Circuit Court in *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975) held that the Plaintiffs must prove the following elements.

(1) the debtor made the representations; (2) that at the time of making the representations the debtor knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

In addition, each of the elements must be proven by clear and convincing evidence, and the burden of proof is on the Plaintiffs. *In re Hess*, 21 B.R. 465 (Bankr.W.D.Va. 1982).

4. Only four (4) of the 21 plaintiffs testified concerning their alleged claims against Debtor. They were Jae Cheol Chang, Helen Kim, Sue Rey Long and Su Pok Yamamoto.

5. Plaintiffs Myong S. Campana, Sae Hee Chong, Emma Dow, Pok Im Fisher, Ae Shin Kim, Chung Woo Kim, Donna Lynn Kim, Hae Suk Kim, Jung Hwa Kim, Mi Yo Kim, Sun Cha Kim, Duk Bong Lee, Jong Moo Lee, Un Ae Lee, Sune Murata, Frances Yu Okada, and Mija Richardson failed to appear during any portion of the trial herein. No evidence was produced in support of the claims of each of the foregoing. Therefore, the Court dismisses all of the claims of these seventeen (17) plaintiffs against the Debtor.

6. As for the Plaintiffs who testified at the trial, the Court concludes as follows:

*Jae Cheol Chang*

■ Mr. Chang only complains of the money which he had lost in Debtor's tanomoshi. There was absolutely no representation by Debtor to induce Mr. Chang to join her tanomoshi. To the contrary, Mr.

Chang joined the tanomoshi to "make some money" and he joined at the recommendation of his brother-in-law, who was a friend of Debtor's bookkeeper. Since Mr. Chang failed to prove any of the elements necessary for a prima facie case of nondischargeability, the Court dismisses his action against the Debtor.

*Helen Kim*

Mrs. Kim joined two of Debtor's tanomoshi groups, one organized on February 17, 1981 and the other on September 10, 1981. On those dates, Debtor was still able to pay and somehow did pay some of her debts. Thus, there was no intention on Debtor's part to deceive her creditors.

■ Since the loan of $5,000.00 made by Mrs. Kim to Debtor on February 17, 1981 was made when Debtor was able to pay her debts, there was also no intention here on Debtor's part to deceive her creditors.

■ However, the circumstances surrounding the $5,000.00 borrowed by Debtor from Mrs. Kim on December 28, 1981 are of a different nature. As of September 28, 1981, Debtor knew that she was not able to pay her debts; she had no source of income. From such circumstances, the Court finds that Debtor had no intention to pay the $5,000.00 borrowed on December 28, 1981.

The Court agrees with the ruling in *In re Gelfand*, 47 B.R. 876 (Bkrtcy.E.D.Penn. 1985) where the Court stated:

A debtor's purchase of goods on credit at a time when he is unable and, therefore, does not intend to pay for them constitutes a false representation under Section 523(a)(2)(A) of the Code. 3 Collier on Bankruptcy 523.08 (15th ed. 1982).

The Court further stated:

Intention to deceive is very subjective, but may be established through circumstantial evidence. (citations omitted). The existence of fraud may be inferred if the totality of circumstances present a picture of deceptive conduct by the debtor which indicates that he intended to cheat the creditor. (citation omitted.)

The facts in the *Matter of Colin*, 44 B.R. 704 (Bkrtcy.W.D.Mo.1984), are also relevant in this case. There, the debtors, after being unable to pay their bills consulted with counsel with the intention of filing bankruptcy on February 1, 1984. Yet, they continued to make charges on their credit cards. And, even after they had filed bankruptcy proceedings on February 16, 1984, they continued to accumulate such charges. The Court held that

> [a]ccording to the governing authorities, in such circumstances, the law implies a misrepresentation and regards it as fraudulent in view of the necessary lack of intention and inability to pay.

*Id.* at 707.

The Court here finds that, when Debtor borrowed the $5,000.00 on December 28, 1981 and promised to repay such loan, she knew that she was unable to pay her debts and that she had no intention to pay her debts. The Court finds that the misrepresentation, concerning her intention to repay when she borrowed such $5,000.00 on December 28, 1981, constitutes false representation under Section 523(a)(2)(A). The Court also finds that Debtor made the representation with the intention to deceive Mrs. Kim, that Mrs. Kim relied on such reputation and that, as a result, she has suffered losses. *In re Taylor*, 514 F.2d 1370 (9th Cir.1975). Thus, the $5,000.00 borrowed on December 28, 1981 is nondischargeable.

### Sue Rey Long

■ With reference to the withdrawals made by Debtor from Mrs. Long's tanomoshis, Mrs. Long failed to prove the dates of the withdrawals. From the evidence presented, the Court is unable to determine that Debtor had no intention to repay such withdrawals at the time of such withdrawals. Thus, the withdrawals are dischargeable.

With respect to the $10,000.00 personal loans made by Mrs. Long to Debtor, the $5,000.00 loan made in September 1981 was adequately secured by a diamond ring. Mrs. Long has cashed in on the security

and that $5,000.00 loan has been extinguished.

However, the circumstances surrounding the $5,000.00 loan made in October of 1981 are substantially similar to the circumstances surrounding the loan made by Mrs. Kim to Debtor on December 28, 1981. In both instances, Debtor had no source of income and she knew that she could not fulfill her promise to repay such loan. This Court concludes that Debtor had no intention to repay the $5,000.00 borrowed from Mrs. Long in October of 1981. The Court thus finds a misrepresentation by Debtor of her intention to repay the money. *In re Gelfand,* 47 B.R. 876 (Bkrtcy.E.D.Penn. 1985). *Matter of Colin,* 44 B.R. 704 (Bkrtcy.W.D.Mo.1984). The Court also finds that Debtor made the representation with the intention to deceive Mrs. Long, that Mrs. Long relied on such representation and that, as a result, she has suffered losses. *In re Taylor,* 514 F.2d 1370 (9th Cir.1975). Thus, the $5,000.00 borrowed by Debtor from Mrs. Long in October 1981 is nondischargeable.

### Su Pok Yamamoto

■ Of the $51,883.00 claimed by Mrs. Yamamoto against Debtor, $30,000.00 is the result of two draws of $15,000.00 each by Debtor from Mrs. Yamamoto's tanomoshi organized in February of 1981. Because Debtor made the withdrawals early in 1981 and because Debtor was then making efforts to repay her tanomoshi withdrawals, there is no evidence of any false pretenses, false representation or actual fraud on the part of Debtor. Thus, the $30,000.00 are dischargeable.

■ When Debtor borrowed the $21,883.00 from Mrs. Yamamoto on December 10, 1981, Debtor had no source of income and she knew that she was not able to fulfill her promise to repay the loan. In fact, Debtor in early December of 1981 accompanied a friend who had consulted an attorney concerning obtaining discharge of her debts in bankruptcy, and Debtor herself was thinking of filing for bankruptcy. The Court finds that Debtor had no intention to repay the $21,883.00 when she

made the loan from Mrs. Yamamoto. Thus, there was a misrepresentation of her intention to repay the loan. *In re Gelfand*, 47 B.R. 876 (Bkrtcy.E.D.Penn.1985). *Matter of Colin*, 44 B.R. 704 (Bkrtcy.W.D.Mo. 1984). The Court also finds that Debtor made the representation to deceive Mrs. Yamamoto, that Mrs. Yamamoto relied on such representation and that, as a result, she has suffered losses. *In re Taylor*, 514 F.2d 1370 (9th Cir.1975). Thus, the $21,883.00 is nondischargeable.

*Summary:*

The following debts are non-dischargeable.

1. $5,000.00 to Helen Kim borrowed by Debtor on December 28, 1981.

2. $5,000.00 to Sue Rey Long borrowed by Debtor on October 1981.

3. $21,883.00 to Sue Pok Yamamoto borrowed by Debtor on December 10, 1981.

All the other claims are dischargeable.

A judgment will be signed upon presentment.