JOHN R. GIBSON, Circuit Judge.
 

 Debtor Barbara Jean Dallam operated a business constructing expensive residences. Before closing on one of the properties, she delivered to the proposed title insurer, Lawyers Title Insurance Corporation, an affidavit stating that all persons furnishing services, labor or materials used in the construction “have been paid in full, that there are no mechanics’ or materialmen’s liens against said property and no claims outstanding which would entitle the holder thereof to claim a lien against the property.” Partly in reliance on this affidavit, Lawyers Title insured the property. Later some fifteen contractors submitted claims to the purchasers of the residence. Lawyers Title settled these claims. When Dal-lam filed for bankruptcy she scheduled all but one of these claims as debts. Lawyers Title then brought an adversary proceeding in the bankruptcy case seeking to recover from Dallam the money it paid to settle the claims and charging that Dallam’s debt was non-dischargeable because she had induced Lawyers Title to insure the title by fraud. 11 U.S.C.A. § 523(a)(2) (West Supp. 1988). The bankruptcy court entered an involuntary dismissal against Lawyers Title on the grounds that Lawyers Title did not prove the lien claimants would have prevailed at a trial on their claims and
 
 *447
 
 therefore Lawyers Title did not satisfy the elements of section 523(a)(2). The district court affirmed. We conclude that the false statement that all construction expenses were paid in full establishes Lawyer’s Title fraud claim and that the debts resulting from the fraud are nondischargeable. We reverse and remand.
 

 Dallam was president and sole stockholder of Dallam Construction Company, which was in the business of building houses in St. Louis. As part of the underwriting process for a title insurance policy on a house Dallam built for the Mace family, Lawyers Title required an affidavit from Dallam stating:
 

 that all of the persons * * * who have furnished services, labor, or materials * * * used in the construction or repair [of the improvements on the insured property] have been paid in full, that there are no mechanics’ or materialmen’s liens against said property and no claims outstanding which would entitle the holder thereof to claim a lien against the property * * * and that such construction or repair has been fully completed
 

 [[Image here]]
 

 At the time Dallam made the affidavit she knew that there were unpaid bills arising out of the project.
 

 In reliance on Dallam’s affidavit, Lawyers Title deleted from its title insurance commitment the usual exception declining to cover claims for mechanics’ and materi-almen’s liens. Lawyers Title did not introduce either the commitment or the policy it issued, but the uncontradicted testimony of its attorney was that deletion of the exception obligated Lawyers Title “to protect and defend the [insureds] against any mechanics’ liens which may have arisen after that effective date of the Commitment,” whether filed or unfiled (Transcript (Tr.) 47, 48). Upon closing, Lawyers Title, acting as escrow agent, paid to Dallam the sum of $19,013.09.
 

 Fifteen creditors made claims for unpaid construction bills against the owners of the property; the owners tendered the claims to Lawyers Title to resolve. Lawyers Title attempted to contact Dallam to demand that she resolve the claims, but was unable to reach her. Lawyers Title negotiated a small discount and settled all fifteen claims. When Dallam filed for bankruptcy protection, she scheduled all but one of these claims.
 
 [1]
 

 Lawyers Title filed its four-count Complaint in the bankruptcy court. Count I sought recovery on grounds of fraud for the amounts Lawyers Title paid to the various claimants. Count II sought punitive damages. Count III sought a determination that Dallam’s debt to Lawyers Title
 
 *448
 
 was nondischargeable under 11 U.S.C. § 523(a)(2). In the alternative Count IV sought relief from the automatic stay so that Lawyers Title could pursue in state courts any relief that the bankruptcy court might decide it lacked jurisdiction to adjudicate.
 

 At trial, Lawyers Title’s proof of the claims consisted of a letter from the Maces informing Lawyers Title of the various claims made against the property and the testimony of a Lawyers Title employee who had confirmed the claims with the claimants. Lawyers Title introduced files it kept on the claims, containing photocopies of demand letters and mechanics’ and materi-almen’s lien statements, apparently file-stamped with the Missouri Circuit Court stamp.
 
 See
 
 Mo.Rev.Stat. § 429.080 (1986). While Dallam’s counsel objected to testimony about the files when they were identified, Dallam made no objections when the files were later admitted into evidence. The evidence did not establish that any of the liens had been perfected, and in three cases the testimony was that no lien statements were filed. Lawyers Title also introduced evidence that it had incurred attorneys’ fees in dealing with the claims.
 

 The bankruptcy court entered an involuntary dismissal, Bankr.R. 7041 (incorporating F.R.Civ.P. 41(b)), at the end of Lawyers Title’s case. The bankruptcy court stated: “[T]he guts of the Affidavit is
 
 not
 
 that bills for service, labor, and materials have not been paid, but
 
 that
 
 those that have not been paid are entities who have a claim to lien.” (Tr. 159) (emphasis in original).
 
 (Cf.
 
 Tr. 164 (same)). The bankruptcy court stated that the purpose of the affidavit was only to protect Lawyers Title against liens that affected the owner’s interest in the real estate and affected the lender’s priority, and that Lawyers Title was “not interested in [Dallam’s] statement that bills have been paid when they haven’t been paid, if they are beyond the lien period.” (Tr. 159-60). The bankruptcy court further explained its reasoning as follows:
 

 [T]he affidavit was construed
 
 not
 
 to furnish
 
 any actionable cause
 
 on the representation that all who had furnished labor, services or materials, had been paid in full: for the reason that Plaintiff would not be exposed to any liability, under its title policy, to a creditor who had not complied with Missouri’s lien laws to be able to establish and enforce a lien upon the real estate, and since there was no such exposure, Plaintiff could not, would not, and did not care about such representations and did not rely upon it.
 

 Lawyers Title Insurance Corporation v. Dallam,
 
 slip op. at 3-4 (No. 85-0155(1)) (Bankr.E.D.Mo. Aug. 22,1986) (emphasis in original). Because the bankruptcy court concluded that there had not been proof that the settled claims were valid liens, it held the false affidavit was not actionable.
 

 Lawyers Title submitted a motion for new trial or to alter and amend the judgment, supported by an affidavit with certified copies of several filed lien statements. The bankruptcy court denied the motion. Slip op. at 19-20.
 

 Lawyers Title appealed to the district court, which affirmed. The district court on appeal recited the limitation of the scope of its review and held that the bankruptcy court’s factual findings were not clearly erroneous. The district court stated: “Lawyers Title would not incur any liability for any debts until liens were filed, and it is reasonable to conclude that its reliance was only on that portion of the affidavit imposing liability.”
 
 In re: Barbara Jean Dallam,
 
 72 B.R. 120 (E.D.Mo.1987), slip op. at 3.
 

 On appeal to this court, Lawyers Title argues that the courts below erred in holding that Dallam could not be liable for her fraud unless Lawyers Title proved the liens were valid and enforceable. Lawyers Title also argues that the courts below erred in refusing to consider hearsay evidence in exhibits that were introduced into evidence without objection and in refusing to allow Lawyers Title to reopen its case to introduce the certified copies of lien statements.
 

 Under 11 U.S.C. § 523(a) a bankruptcy discharge does not discharge an individual from a debt
 

 
 *449
 
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 

 (A) false pretenses, a false representation, or actual fraud * * *.
 

 This section has been construed to incorporate the elements of common law fraud, 1.e., that the debtor knowingly made a false statement with the intent and effect of inducing reliance thereon and thereby caused loss to the creditor.
 
 Matter of Colin,
 
 44 B.R. 704, 706 (Bankr.W.D.Mo.1984).
 

 The bankruptcy court erred in concluding Dallam’s affidavit did not constitute an actionable false representation under section 523(a). The affidavit makes three statements in the conjunctive: (1) that all of the persons who have furnished services, labor or material used in the construction have been paid in full; (2) that there are no mechanics’ or materialmen’s liens against said property, and (3) that there are no claims outstanding which would entitle the holder thereof to claim a lien against the property. In construing a contract under Missouri law, “no substantive clause may be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course.”
 
 Harnden v. Continental Ins. Co.,
 
 612 S.W.2d 392, 396 (Mo.Ct.App.1981). The bankruptcy court’s unabashedly visceral analysis looked only to the second and third of the three elements of the statement.
 

 As a result of this affidavit Lawyers Title performed two acts: first, it deleted the exclusion as to mechanics’ liens, thus assuming additional liability; and secondly, it paid $19,013.09 to Dallam. By deleting the mechanics’ lien exclusion Lawyers Title became liable not only to pay valid liens, but also to “defend the Maces against any mechanic’s liens which may have arisen after that effective date of the Commitment,” (Tr. 48) whether filed or unfiled (Tr. 47), and claims for which substantiation had been obtained. (Tr. 48). The president of the corporation that acted as Lawyers Title’s agent testified that negotiated settlements could save money and eliminate attorneys’ fees and it was in the best interest of the property owners, Lawyers Title and perhaps even Dallam to get the claims settled. He ordered that they be settled quickly. (Tr. 136).
 

 Dallam’s closely held corporation benefited from the predicament in which it had placed Lawyers Title, since the amounts Lawyers Title paid extinguished Dallam Construction Company’s liability for the same debts (which Dallam scheduled in her bankruptcy petition).
 
 [2]
 

 We conclude that Lawyers Title produced evidence establishing fraud and a nondis-chargeable debt under 11 U.S.C. § 523(a)(2): Dallam obtained payment of her business’ debts by knowingly making a false statement in order to induce Lawyers Title to rely on it, and Lawyers Title’s reliance on the statement caused it to lose money. The lower courts erred in holding the complaint should be dismissed.
 

 We need not decide the evidence questions presented on appeal, since on remand from reversal of a Rule 41(b) dismissal, a plaintiff “ ‘should be allowed to supplement the present record, in chief or by rebuttal, with any evidence that could properly have been admitted at the first trial of these issues.’ ”
 
 Chaiffetz v. Robertson Research Holding, Ltd.,
 
 798 F.2d 731, 735 (5th Cir.1986) (quoting
 
 Riegel Fiber Corp. v. Anderson Gin Co.,
 
 512 F.2d 784, 793 n. 19 (5th Cir.1975)); 5 J. Moore, J. Lucas & J. Wicker, Moore’s Federal Practice ¶ 41.13[2] (1987). On retrial Lawyers Title will have an opportunity to further consider the requirements of the rules of evidence. The bankruptcy court should give consideration to the differing legal context in which the evidence must be considered in light of this opinion and should also consider whether Dallam’s scheduling of the claims is an admission of the validity of the bills on the Maces’ house.
 

 
 *450
 
 The judgment of the district court affirming the order of the bankruptcy court is reversed and this case is remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The claimants, the amounts of their claims, the amount Dallam scheduled and the amount Lawyers Title paid are as follows:
 

 [[Image here]]
 

 [[Image here]]
 

 [2]
 

 . The fact that Dallam’s fraud obtained the benefit for her closely held corporation rather than herself directly does not alter her liability under 11 U.S.C. § 523(a)(2).
 
 In re Sobel,
 
 37 B.R. 780, 786 (Bankr.E.D.N.Y.1984);
 
 see also Matter of Richmond,
 
 29 B.R. 555, 559 (Bankr.M.D.Fla.1983).